# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

| | | |
|---|---|---|
| KENNETH BRANT KICKLIGHTER, SR. and BOBBY CARLTON KICKLIGHTER, JR., as surviving children of Bobby Kicklighter, deceased, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION FILE NO. 6:23-cv-00016 |
| BRIAN ADAMS, in his individual and professional capacity and IREON MOORE, in her individual and professional capacity, | § § § § § | |
| *Defendants*. | § § | |

## **DEFENDANT MOORE'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW Defendant Ireon Moore with her Motion to Dismiss and Brief in support, showing the Court as follows:

## I.   INTRODUCTION

The Complaint was originally filed in Tattnall County state court on January 10, 2023, and included two substantive claims: 42 U.S.C. § 1983 for due process violations under the Georgia Constitution and wrongful death. (Complaint). Defendants timely removed to this Court based on federal question and pendent jurisdiction. (Notice of Removal). Because the Complaint is untenable for three reasons, the claims against Ms. Moore should be dismissed.

1

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiffs claim that Nathan Weekes, an inmate at Smith State Prison, was charged with conspiracy to commit the murder of Bobby Kicklighter. (Cmpl., ¶¶ 6, 8-11). Plaintiffs allege that Weekes facilitated a conspiracy with a contraband cell phone. (*Id.*). Plaintiffs contend that Weekes used the cell phone to communicate with Sumlin, Murphy, and Jones—who were not incarcerated and who allegedly murdered Mr. Kicklighter. (*Id.* ¶¶ 5-22). The intended victim was not Mr. Kicklighter apparently, but a correctional officer who lived near Mr. Kicklighter. The conspirators mistakenly executed the murder at an incorrect address. (*Id.* ¶¶ 21-24).

The suit against Ms. Moore is based on the following allegation: that she knew or should have known that Weekes was in possession of a contraband cell phone and that it was foreseeable that the phone would lead to the murder of Mr. Kicklighter. (*Id.* ¶¶ 26-28).

## III.    ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's Complaint should be dismissed for at least three reasons:

- Plaintiffs' Complaint fails to state a due process claim against Ms. Moore under 42 U.S.C. § 1983,

- Ms. Moore is entitled to qualified immunity, and

- Plaintiffs' state law wrongful death claim is barred by the Georgia Tort Claims Act ("GTCA").

1.  **MOTION TO DISMISS STANDARD**

For purposes of a motion to dismiss brought under FRCP 12(b)(6), the Court must accept the complaint's factual allegations as true. *Hardy v. Regions Mort., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. And "unwarranted deductions of fact in a complaint are not admitted as true for the purposes of testing the sufficiency of [the plaintiff's] allegations." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

The *Iqbal* Court instructed that, while a court must accept all factual allegations in a complaint as true, it need not accept legal conclusions as fact. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss," the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged— but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.*

The Eleventh Circuit has stated that a complaint must "contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 716 n.2 (11th Cir. 2010). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Plaintiffs' Complaint falls well short of this line.

### 2. PLAINTIFFS' COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM

Plaintiffs' due process claim fails because the allegations do not plausibly support an inference that Ms. Moore violated Mr. Kicklighter's constitutional rights. In *Jones v. Phyfer,* 761 F.2d 642 (11th Cir. 1985), the court held that "there is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law ..." *Id.* at 618. In *Martinez, et al. v. California,* 444 U.S. 277 (1980), the court wrote that the Fourteenth Amendment protected a plaintiff from deprivation by the "state ... of life ... without due process of law." *Id.* at 284, 100 S.Ct. at 559. Weekes, Sumlin, Murphy, and Jones were not state officers and were not acting under color of law.

4

There is an initial requirement for a Section 1983 action "... that the plaintiff be deprived of a right 'secured by the constitution and the laws.'" *Baker v. McCollan,* 443 U.S. 137 (1979). The Plaintiffs state that Kicklighter was deprived of his right to life as secured by the Constitution. But even if the Defendants' constructive or actual knowledge that Weekes had obtained a cell phone could be characterized as state action— which is doubtful— Weekes' conspiracy with three non-incarcerated killers cannot be characterized as state action. Nor was it foreseeable that a particular contraband phone would be used to orchestrate a mistaken identity killing. Consider that in 2022 alone, there were 8,074 contraband phones recovered in Georgia corrections facilities.[1] And this is not a problem limited to Georgia; it is well-documented that contraband phones affect state and federal prisons in all fifty states.[2] It is not plausible to claim that the knowledge of contraband cellphones circulating in the prison system made the underlying criminal act foreseeable. Thus, the allegations do not plausibly support possible liability. As stated in *Bowers,* "there is

---

[1] Recently, over 25 states sent a letter to Congress requesting legislation to assist with the problem of contraband cell phones. *See*, Office of the Attorney General, *Carr Pushes for Federal Legislation to Combat Contraband Cell Phones in Prisons*, Jan. 23, 2023, https://law.georgia.gov/press-releases/2023-01-26/carr-pushes-federal-legislation-combat-contraband-cell-phones-prisons (last visited Mar. 14, 2023).

[2] Office of Sen. Tom Cotton, *Senator Cotton, Rep. Kustoff, Colleagues Introduce Bill To Stop Contraband Cellphone Use In Prisons*, Aug. 22, 2022, https://www.cotton.senate.gov/news/press-releases/senator-cotton-rep-kustoff-colleagues-introduce-bill-to-stop-contraband-cellphone-use-in-prisons (last visited Mar. 14, 2023).

no constitutional right to be protected by the state against being murdered by criminals or madmen." *Id.* at 618.

In *Wright v. City of Ozark,* 715 F.2d 1513 (11th Cir.1983), the court discussed the requirements for establishing the constitutional duty a state has to protect a member of the public from third party criminal acts. In *Wright*, a woman was raped in an area where rapes had recently occurred. The plaintiff sued the city and city officials alleging that they had deliberately suppressed information about the prior rapes. The court held that "... the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state." *Id.* at 1515.

In *Martinez,* a 15-year-old girl was murdered by a parolee five months after he was released from prison. 444 U.S. at 285. Appellants brought a Section 1983 action, claiming that the parolee's actions subjected the decedent to a deprivation of her life without due process of law. In that case, the Supreme Court required a showing that the decedent, as distinguished from the public at large, faced a special danger. The court also held the appellant's death was too remote of a consequence based on the parole officer's actions. *Id.*

*Martinez* and *Wright* hold that a Section 1983 action requires a special relationship between the victim and the criminal or between the victim and the state, or some showing that the victim, as distinguished from the public at large, faced a special danger. There is no special relationship alleged here. Courts have held that, without the kind of special relationship discussed in *Martinez,* the claim fails. For example, in *Holmes v. Wampler, M.D.*, the plaintiff was stabbed by a released inmate of the Virginia State Hospital and brought a civil rights action against the hospital superintendent and physician for negligent release and failure to warn of probable dangerousness. 546 F.Supp. 500 (E.D.Va.1982). The court wrote that the "[p]laintiff has not alleged that [the murderer] had singled plaintiff out of the general public as a person toward whom he was hostile, or that if [the murderer] harbored such hostility toward plaintiff, the state defendants knew or had reason to know of it." *Id.* at 506. The *Holmes* court held that the consequences were too remote to hold the state defendants liable under federal civil rights law.

As in *Holmes*, the consequences are too remote to hold Ms. Moore liable under Section 1983. There is no special relationship between Mr. Kicklighter and Ms. Moore to support a plausible inference of liability. Plaintiffs' claims against Ms. Moore should be dismissed.

### 3. MS. MOORE IS ENTITLED TO QUALIFIED IMMUNITY

Even if the Plaintiffs stated a claim under § 1983, Ms. Moore would still have a right to qualified immunity. So long as a government official acts within the scope of her discretionary authority and does not violate clearly established law of which a reasonable person should have known, the doctrine of qualified immunity protects her from suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818; *Purcell Ex Rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F. 3d 1313, 1319 (11th Cir. 2005). Qualified immunity provides immunity from suit not just immunity from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Vinyard v. Stanfield*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To receive qualified immunity, a public official must first show that he was acting "within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005); *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988)).  The allegations assert that Ms. Moore was performing her official duties under color of state law as a correctional officer.

Enforcing Georgia Department of Corrections policies on prohibiting contraband within Smith State Prison is part of the discretionary authority of a correctional officer. The burden then shifts to Plaintiffs to show that qualified immunity is not warranted under a two-part test.

"As a threshold question, a court must ask, taken in the light most favorable to plaintiff, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Id.* This analysis is done using Plaintiffs' version of the facts. *See Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013). The second part of the test requires Plaintiff to show that the constitutional right was clearly established at the time of the violation. *Lee*, 284 F.3d at 1194.

Plaintiffs cannot demonstrate that a correctional officer has violated clearly established constitutional rights of an unknown, noncustodial third party by failing to discover a contraband cell phone obtained by an inmate to facilitate a crime. As a result, Ms. Moore is entitled to dismissal of Plaintiffs' § 1983 claim based on qualified immunity.

**4.   PLAINTIFFS' STATE-LAW CLAIMS ARE BARRED BY THE GEORGIA TORT CLAIMS ACT, O.C.G.A. § 50-21-20 *et seq.***

The Georgia Constitution expressly preserves the State's sovereign immunity and makes clear that such immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." Ga. Const., Art. I, § II, ¶ IX(e) (1983). The General

9

Assembly enacted the GTCA in 1992. O.C.G.A. § 50-21-20, *et seq.; see also*, *Datz v. Brinson*, 208 Ga. App. 455, 455-56 (1993). By its own terms, the GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a).

In passing the GTCA, the General Assembly recognized "[t]he exposure of the state treasury to tort liability must therefore be limited." O.C.G.A. § 50-21-21(a). "Thus, the State Tort Claims Act, by its own terms, must be strictly construed." *Howard v. State of Ga.*, 226 Ga. App. 543, 543 (1997). Additionally, the General Assembly declared as a matter of public policy that "the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article." O.C.G.A. § 50-21-21(a).

Sovereign immunity is a threshold issue. *McConnell v. Dep't of Lab.*, 302 Ga. 18, 18-19 (2017); *Murray v. Dept. of Transp.*, 240 Ga. App. 285 (1999). And subject matter jurisdiction should be decided preliminarily. *See McConnell* at 19; *Rivera v. Washington*, 298 Ga. 770, 776-78 (2016). The lack of subject matter jurisdiction is a matter in abatement, which does not test the merits of the claim. *Ga. Ports Auth. v. Harris*, 243 Ga. App. 508 (2000). Questions of waiver of sovereign immunity are, therefore, appropriately considered in the context of a motion to dismiss for lack of subject matter jurisdiction. O.C.G.A. § 9-11-12(b)(1).

Sovereign immunity is not an affirmative defense. The plaintiff bears the burden of proving the existence of a waiver of sovereign immunity. *Sherin v. Dep't of Hum. Res.*, 229 Ga. App. 621, 625 (1997). Plaintiffs cannot satisfy their burden.

Under the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). The term "state officer or employee" has been defined within the GTCA:

> (7) "State officer or employee" means an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation….

O.C.G.A. 50-21-22(7). Plaintiff admits that Ms. Moore "was employed by Georgia Department of Corrections ("GDC") at Smith State Prison … at all times relevant to this complaint". (Cmpl., ¶ 3). Therefore, it is undisputed that the GTCA covers Ms. Moore.

The GTCA requires that a claimant "name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually." O.C.G.A. § 50-21-25(b). If a state officer or employee is sued for a tort committed while acting within the scope of his official duties or employment, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant."

O.C.G.A. § 50-21-25(b).  In other words, state employees are immune from suit and the government entity for whom the state employee worked is the only defendant that may be sued for an employee's alleged torts. *See*, O.C.G.A. § 50-21-25.[3]

The GTCA specifically "exempts state officers and employees from liability for any torts committed while acting within the scope of their official duties or employment." O.C.G.A. § 50-21-25 (a).  The scope of the exception is broadly construed: "Where the state employee acts in the prosecution and within the scope of [her official duties], intentional wrongful conduct comes within and remains within the scope of employment." *Feist v. Dirr*, 271 Ga. App. 169, 172 (2004); *Ridley v. Johns*, 274 Ga. App. 241, 242 (2001).[4] Even when the Plaintiff alleges an act is committed with malice, if the "underlying conduct complained of is tortious" and occurs within the scope of the state employee's official duties, the employee is protected by official immunity under the GTCA.  *Premo v. Ga. Ports Auth.,* 227 Ga. App. 27, 29 (1997); *Davis v. Standifer*, 275 Ga. App. 769, 772 (2005).

*Davis v. Standifer* illustrates just how broad the construction of the GTCA's exemption is. 275 Ga. App. at 769. In *Davis*, the female plaintiff claimed that Standifer, a Georgia State Patrol Officer, assaulted her during a traffic stop. Because

---

[3] Any attempt to add the state entity would be futile because the Plaintiffs failed to meet the prerequisites of the GTCA. O.C.G.A § 50-21-26(a), O.C.G.A § 50-21-35, O.C.G.A § 50-21-24(2).

[4] The scope of official duties is "broad enough to include numerous acts which, if prosecuted criminally, would be characterized as aggravated assault, child molestation, rape, and even murder." *Ardizzone v. Dept. of Human Services*, 258 Ga. App. 858, 859 (2002).

12

Standifer was interacting with a motorist when the assault took place, the court determined that the assault "arose from the performance of Standifer's official duties as a patrol officer." *Id.* at 772. Although assault is not in the job description of a Georgia State Patrol Officer, the job description is irrelevant. The *Davis* court determined that Standifer was acting within his official duties and was immune from suit under O.C.G.A. § 50-21-25(a).

The same holds true here. Plaintiffs' Complaint alleges that all of Ms. Moore's acts were committed while "employed by Georgia Department of Corrections." (Cmpl., ¶ 3). Even if the Complaint plausibly alleged that Ms. Moore engaged in tortious acts, which it does not, Ms. Moore was acting within her discretion as a state employee. Thus, Ms. Moore was in the scope of her employment and the GTCA applies.

Since the GTCA "exempts state officers and employees from liability for any torts committed while acting within the scope of their official duties," Ms. Moore is immune under O.C.G.A. § 50-21-25(a). All claims against Ms. Moore should be dismissed.

## **CONCLUSION**

Based on the allegations, arguments, and relevant case law, the claims against Ms. Moore should be dismissed.

This 14th day of March, 2023.

                                                    Respectfully submitted,

                                                    /s/ Paul Henefeld
                                                    Paul Henefeld
                                                    Georgia Bar No. 346755

                                                    /s/ Noah Green
                                                    Noah Green
                                                    Georgia Bar No. 468138
                                                    *Attorneys for Defendant Moore*

**Henefeld & Green, P.C.**
3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
404-841-1275
Fax: 404-841-0248
PHenefeld@HenefeldGreen.com
NGreen@HenefeldGreen.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

| | | |
|---|---|---|
| KENNETH BRANT KICKLIGHTER, SR. and BOBBY CARLTON KICKLIGHTER, JR., as surviving children of Bobby Kicklighter, deceased, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION FILE NO. 6:23-cv-00016 |
| BRIAN ADAMS, in his individual and professional capacity and IREON MOORE in her individual and professional capacity, | § § § § § | |
| *Defendants*. | § § | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the opposing party with a true and correct copy of **Defendant Ireon Moore's Motion to Dismiss and Brief in Support** by filing same with the Clerk of Court using the available e-file system, which will provide email notification to the attorneys of record listed below:

Brent J. Savage
SAVAGE, TURNER, PINCKNEY, SAVAGE & SPROUSE
102 East Liberty St., 8th Floor
P.O. Box 10600
Savannah GA 31412
bsavage@savagelawfirm.com

Annarita L. McGovern
Satcher & McGovern LLC
288 South Main Street, Suite 100
Alpharetta, GA 30009
amcgovern@satchermcgovernlaw.com

15

This 14th day of March, 2023.

                                            Respectfully submitted,

                                            <u>/s/ Paul Henefeld</u>
                                            Paul Henefeld, Esq.
                                            Georgia Bar No. 346755
                                            *Attorney for Defendant Moore*

**Henefeld & Green, P.C.**
3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
404-841-1275
Fax: 404-841-0248
PHenefeld@HenefeldGreen.com